UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| BENNY ARAGON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:11CV00047AGF |
| ) | |
| WAL-MART STORES EAST, LP, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM and ORDER

This personal injury action is before the Court on the motion of Defendants Wal-Mart Stores East, LP ("Wal-Mart") and Pallet Companies, Inc., d/b/a IFCO Systems, N.A. ("IFCO") for summary judgment on the claims of Plaintiff Benny Aragon. For the reasons set forth below, this motion will be granted.

### Background

The pleadings, depositions, and affidavits on file demonstrate the following relevant facts, except as otherwise noted:

This case involves a claim for damages by Plaintiff, a truck driver, against Wal-Mart and IFCO, for injuries Plaintiff suffered when the truck doors were opened to unload pallets that had been loaded onto the truck. Plaintiff has been a truck driver for over thirty years and has driven a variety of trucks during that time. At the time of the accident in question, he was under contract to J.B. Hunt Transport, Inc., ("J. B. Hunt") to pick up a box trailer containing shrink-wrapped pallets of reusable plastic containers from the Wal-Mart distribution facility in Moberly, Missouri, and to deliver the trailer to IFCO's washing facility in Bolingbrook, Illinois.

Defendants have established by affidavit[1] that pursuant to a written agreement between IFCO and Unyson Logistics ("Unyson"), Unyson "brokered"[2] J.B. Hunt and others to transport IFCO's reusable containers between Wal-Mart distribution centers, IFCO washing facilities, and Wal-Mart's produce suppliers.  Doc. No. 55, Campbell Aff. at ¶¶4-7.  The agreement incorporated certain "Carrier Guidelines" specifying that box trailers used to transport pallets have either two load locks or two straps to secure the load. *Id.*  The terms of a pricing agreement between Unyson and J.B. Hunt incorporated the Carrier Guidelines, and Defendants assert that Plaintiff, as a contractor for J.B. Hunt, was required to haul the box trailer in accordance with the terms of the Carrier Guidelines.  *Id.* at ¶¶7-8.

Despite his many years of trucking experience, prior to this incident, Plaintiff had never hauled pallets under contract with J.B. Hunt, and had never hauled plastic pallets. Plaintiff had hauled wooden pallets for other brokers, and testified in deposition that he had secured the pallets with load locks, but had not used straps.  The parties agree that J.B. Hunt trailers generally have straps to secure the load, although Plaintiff testified that he did not know whether the particular trailer he was carrying on October 7, 2010, had straps or whether they comported with the requirements of the Carrier Guidelines.

---

1   Defendants attest to the agreements and the Carrier Guidelines in support of their position, but they have not provided either to the Court.
2   A broker is "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."  49 U.S.C. § 13102(2).

2

The parties disagree about whether Plaintiff was given any instructions about securing the load.  Defendants assert that Plaintiff was told to use the straps that attached to the clips to secure the load.  Plaintiff states that neither J.B. Hunt, Wal-Mart, nor IFCO gave him instructions about securing the load of pallets.

On October 7, 2010, Plaintiff arrived at Wal-Mart's Moberly, Missouri distribution center, received the pickup number for his delivery, and located the box trailer he was to drive to Bolingbrook, Illinois.  Before Plaintiff arrived at the Moberly facility, the box trailer had been loaded by Defendant IFCO.  Defendants assert that trailers loaded with plastic pallets were never sealed at Wal-Mart distribution centers.  Plaintiff asserts that the load was sealed with a "yellow seal" when he first hooked it to his trailer.

Plaintiff hooked the assigned box trailer to his tractor, and drove the trailer to the gate of the Wal-Mart distribution facility.  At the gate, the Wal-Mart security guard broke the seal on the load and either Plaintiff or the guard opened the right-hand rear door of the trailer.  The security guard and Plaintiff looked inside, but it is undisputed that neither the security guard nor Plaintiff opened the left-hand side of the trailer.  Plaintiff asserts that when the right-hand side of the trailer was open, he could see that the pallets were shrink-wrapped and did not notice any defects in the packing of the pallets.  Plaintiff also testified that he could see neither straps nor load locks securing the pallets.

After Plaintiff and the security guard viewed the load of pallets through the right-hand door of the trailer, one of them placed another seal on the load.  Defendants, by affidavit, contend that Plaintiff was given a bill of lading and a seal to apply to the doors of the trailer and that Plaintiff sealed the load after he and the guard had viewed it through the

right-hand rear door. Defendants further assert that the purpose of providing a non-locking seal is not to keep a driver from gaining access to the load, but to serve as an acknowledgement by the driver that he is responsible for the load. Plaintiff testified that he was uncertain whether he or the security guard applied the seal to the load. Plaintiff asserts, however, that the purpose of the non-locking seal is to demonstrate that the driver has not been in contact with, or altered the cargo.

Plaintiff drove the sealed load from the Wal-Mart Distribution Center in Moberly, Missouri to Bolingbrook. He did not inspect or secure the load at any point during the 380 mile trip from Moberly to Bolingbrook. Defendants assert that Plaintiff easily could have opened the sealed doors of the trailer during this trip. Plaintiff disputes this assertion, contending that he was not permitted to break the seal on a trailer during transport and would face repercussions if he had done so.

When Plaintiff arrived at the Bolingbrook location, around 1:30 p.m. on October 7, 2010, the load was still sealed. A supervisor from IFCO checked the trailer for the seal, and Plaintiff and/or the supervisor broke the seal to open the load. As Plaintiff opened the left-hand rear trailer door, falling pallets and the trailer doors knocked him down, injuring him and breaking his leg.

### Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of demonstrating the absence of any genuine issue of material fact rests on the movant.

*Wingate v. Gage Cnty. Sch. Dist.*, No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008). Nevertheless, a nonmovant may not rest upon mere denials or allegations, but must instead designate the specific facts sufficient to raise a genuine issue for trial. *See Crossley v. Georgia–Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Self-serving, conclusory statements, without more, are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). Moreover, the requirement, on a motion for summary judgment, that facts must be viewed in the light most favorable to the nonmoving party applies only if there is a genuine dispute as to those facts. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (internal quotation marks and citation omitted). Finally, in ruling on a motion for summary judgment, a court may not invade the province of the jury. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.*

**Arguments of the Parties**

Defendants first assert that Plaintiff's alleged failure to comply with the regulations set forth in 49 CFR § 392.9 constitutes negligence *per se* and mandates a judgment in their favor as a matter of law. In the alternative, Defendants assert that IFCO, the loader of the pallets, did not owe the driver a duty of care with respect to the pallets because the applicable regulations require the driver to assure himself that the load is properly secured.

5

Defendants further contend that on the basis of Plaintiff's observation of the load at Moberly, Plaintiff knew or should have known that it was not secured. Finally, Defendants assert that Plaintiff failed to carry out his duty to secure the load either before leaving Moberly or at some point during the trip to Bolingbrook.

Plaintiff contends that there are genuine issues of material fact precluding summary judgment here. Specifically, Plaintiff asserts that the defect in loading was not observable at the time he and the security guard viewed the pallets at Moberly. He contends that he believed the load was secure because he observed the shrink wrapped pallets through the right hand door. In addition, Plaintiff asserts that because IFCO loaded the truck, IFCO was responsible for the safety of the load. Plaintiff finally asserts that the sealing of the load required by Wal-Mart precluded him from discovering or rectifying the defect during the course of his trip to Bolingbrook.

**Discussion**

As a federal court sitting in diversity, the Court is required to apply the substantive law of the state whose law governs the action. *Eng v. Cummings*, *McClorey, Davis & Acho, PLC*, 611 F.3d 428, 432 (8th Cir. 2010). The parties agree that Missouri law governs this dispute.

Applying Missouri law, the Court first concludes that Defendants' argument asserting negligence *per se* is without merit. Defendants argue that Plaintiff's failure to secure the plastic pallets at Moberly or during the course of his trip to Bolingbrook violated the Federal Motor Carrier Safety Administration Regulations found at 49 CFR § 392.9,

6

related to the inspection of cargo by carriers.[3] Thus, they assert Plaintiff's conduct constitutes negligence *per se* and entitles them to judgment as a matter of law. Even if the Court were to assume that Plaintiff was negligent in failing to inspect the cargo at Moberly or during his trip to Bolingbrook, such a determination would not entitle Defendants to judgment as a matter of law. Under the comparative fault rubric applicable in Missouri, a plaintiff's negligence does not relieve a defendant of liability unless the defendant owes no duty to plaintiff. *See Gustafson v. Benda*, 661 S.W.2d 11, 16 (Mo. 1983). "A duty to

---

[3] (a) General. A driver may not operate a commercial motor vehicle and a motor carrier may not require or permit a driver to operate a commercial motor vehicle unless–
> (1) The commercial motor vehicle's cargo is properly distributed and adequately secured as specified in §§ 393.100 through 393.136 of this subchapter . . . .

(b) Drivers of trucks and truck tractors. Except as provided in paragraph (b)(4) of this section, the driver of a truck or truck tractor must–
> (1) Assure himself/herself that the provisions of paragraph (a) of this section have been complied with before he/she drives that commercial motor vehicle;
> (2) Inspect the cargo and the devices used to secure the cargo within the first 50 miles after beginning a trip and cause any adjustments . . . to ensure that cargo cannot shift on or within, or fall from the commercial motor vehicle; and
> (3) Reexamine the commercial motor vehicle's cargo and its load securement devices during the course of transportation and make any necessary adjustment . . . to ensure that cargo cannot shift on or within, or fall from, the commercial motor vehicle. Reexamination and any necessary adjustments must be made whenever–
>> (i) The driver makes a change of his/her duty status; or
>> (ii) The commercial motor vehicle has been driven for 3 hours; or
>> (iii) The commercial motor vehicle has been driven for 150 miles, whichever occurs first.
> (4) The rules in this paragraph (b) do not apply to the driver of a sealed commercial motor vehicle who has been ordered not to open it to inspect its cargo or to the driver of a commercial motor vehicle that has been loaded in a manner that makes inspection of its cargo impracticable.

7

exercise care can be imposed by a controlling statute or ordinance," but the existence of such a duty does not relieve the other party of liability where comparative fault is to be assessed. *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. 1976); *see also* MAI 32.01; 37.01 [2012 Revision].

Defendants, relying on *Camp v. TNT Logisitics Corp.*, 553 F.3d 502, 512 (7th Cir. 2009), assert that they owe the driver no duty of care with respect to allegedly unsecured or improperly loaded pallets. But Defendants' reliance on *Camp* is misplaced. In *Camp*, unlike the present case, the plaintiff driver knew that her load contained an unsecured pallet and agreed to take the pallet despite its being unsecured. *Id.* at 505. Moreover, because the plaintiff in *Camp* conceded that the defect in the loading of the pallets was open and obvious, the Seventh Circuit rejected plaintiff's arguments that the loader of the cargo owed her a duty of care. *Id.* at 512. The court framed the issue as one of "aiding and abetting" tortious conduct and failed to consider the effect of comparative fault in reaching its determination. *Id*. In light of the factual distinction between *Camp* and the present case, this Court is persuaded that more recent cases from the Eighth Circuit and other jurisdictions offer a better reasoned approach and rejects *Camp* as determinative of this motion. *See, e.g.*, *Vargo-Schaper v. Weyerhaeuser Co*., 619 F.3d 845, 848 (8th Cir. 2010).

Still remaining is the issue of whether Missouri law imposes any duty of care on Wal-Mart and IFCO, as shippers, to safely secure goods the shippers have loaded in order to avoid injury to the carrier or the driver, as the agent of the carrier. Since the adoption of comparative fault, Missouri courts have not addressed this issue and in the absence of

8

controlling Missouri law, the Court must predict how the Missouri Supreme Court would resolve it.[4] *Miller v. Redwood Toxicology Laboratory, Inc.,* 688 F.3d 928, 937 (8th Cir. 2012). In so doing, the Court is to '"follow decisions from the intermediate state courts when they are the best evidence of [Missouri] law' and "consider analogous decisions, considered dicta, and any other reliable data." *Id*. (quoting *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1050 (8th Cir. 2012) (internal quotation omitted)).

Under Missouri law "[a]ny action for negligence requires the plaintiff to establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the plaintiff's injury was proximately caused by the defendant's failure." *Jarrett v. Jones*, 258 S.W. 3d 442, 448 (Mo. 2008). Although Missouri state courts have not determined whether a shipper in the situation of these Defendants owes a duty of care to the carrier, Missouri courts do recognize that a defendant can assume a duty, by contract or by conduct, and can be held liable for injuries caused by the unsafe performance of that assumed duty. *See Martin v. Mo. Highway and Transp. Dept*., 981 S.W.2d 577, 580 (Mo. Ct. App. 1998); *Kilventon v. United Mo. Bank*, 865 S.W.2d 741, 745 (Mo. Ct. App. 1993).

---

[4] More than forty years ago and prior to the adoption of the comparative fault rubric which now governs under Missouri law, the Missouri Supreme Court obliquely addressed the issue before this Court. *Johnson v. California Spray-Chemical Co.*, 362 S.W.2d 630, 635 (Mo. 1962). In the context of an indemnity claim, the Missouri Supreme Court rejected *United States v. Savage Truck Line, Inc.,* 209 F.2d 442, 445 (4th Cir.1953) as an application of "last clear chance," a doctrine not followed under Missouri law. *Id*. (stating, in dicta, "we do not agree with the decision [in *Savage*] and would not care to follow it because it . . . is based upon . . . the principle [of] last clear chance . . . ."). Since its ruling in *Johnson*, the Missouri Supreme Court has adopted "a comprehensive system of comparative fault supplant[ing] the doctrines of contributory negligence, last clear chance, and humanitarian negligence." *Gustafson*, 661 S.W.2d at 16.

The Court further notes that the Missouri Supreme Court adopted § 323 of the Restatement (Second) of Torts, which imposes a duty on those who voluntarily render services to another. *See Stanturf v. Sipes,* 447 S.W.2d 558, 561-62 (Mo. 1969). Other jurisdictions adopting § 323 have found its principles applicable to the existence of the duty in question at issue here. *See, e.g., Spence v. ESAB Group, Inc.,* 623 F.3d 212, 221 (3d Cir. 2010) (noting that attributing a duty to the shipper as well as the carrier accords with § 323 of the Restatement (Second) of Torts); *J.D. Cousins & Sons, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, 341 F.3d 149, 155 (2d Cir. 2003) (citing Restatement (Second) of Torts § 323). Furthermore, Missouri case law reflects the notion that one who acts voluntarily or otherwise to perform an act, even when there was no duty to act originally, can be held liable for the negligent performance of that act. *Bowan ex rel. Bowan v. Express Med. Transporters, Inc.,* 135 S.W.3d 452, 457-58 (Mo. Ct. App. 2004).

In addition to these authorities, the Court finds persuasive the reasoning of other federal courts holding in similar cases that it is reasonable for a carrier or truck driver to expect that the shipper that loads cargo onto the truck container will do so in a manner that is safe and will not increase the likelihood of accident or injury. *See Spence,* 623 F.3d at 221; *Vargo-Schaper*, 619 F.3d at 848-49; *Franklin Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865, 868-69 (4th Cir. 1984); *United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 445 (4th Cir. 1953).

The Federal Motor Carrier Safety Administration Regulations noted above and found at 49 CFR § 392.9, give rise to duties relevant to this dispute. As noted above, the Eighth Circuit has cited with approval the following explanation of the duties and

responsibilities of common carriers, shippers, and shippers' agents arising under the Federal Motor Carrier Safety Regulations 49 C.F.R. § 390.5 with respect to injuries incurred as a result of improperly loaded freight:

> "The primary duty as to the safe loading of property is . . . upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper."

*Vargo-Schaper*, 619 F.3d at 848 (quoting *Savage*, 209 F.2d at 445).

This formulation, known as the *Savage* rule, "imposes liability on carriers even if the shippers negligently loaded the cargo, except where the shippers' 'negligence was undiscoverable through a reasonable safety inspection.'" *Vargo-Schaper,* 619 F.3d at 848-49 (quoting *Decker v. New England Pub. Warehouse, Inc.,* 749 A.2d 762, 767 (Me. 2000)). The Court believes that since comparative fault has been adopted, the Missouri Supreme Court would now follow this rule.

On the basis of these precedents, the Court is persuaded that the Missouri Supreme Court would find that Defendants had a duty of care to prevent latent loading defects, but that they did not have a duty to prevent or correct any open or obvious loading defect. Viewing the evidence in the light most favorable to Plaintiff as the Court is required to do on summary judgment, the Court must assume the accident was caused in part by IFCO's negligence in loading the trailer. The question then becomes whether such defect in loading was obvious or latent.

The latency of a defect is ordinarily a question of fact. *Spence*, 623 F.3d at 221.

Here, Defendants have offered evidence indicating that the pallets were not secured by straps or load locks, and Plaintiff has admitted that the absence of these devices was apparent to him.

It is true that "[t]he obviousness of the absence of a particular method of securing a load, does not necessarily compel a conclusion that the risk created by the missing securement device is patent."  *Spence*, 623 F.3d at 220; *see also Franklin*, 748 F.2d 868-69 (holding that although shipper's loading of heavy steel coils without strapping and chocking was "open and obvious" to plaintiff trucker, it did not follow that "the defect in this manner of loading was open and obvious"); *see also Smith v. HD Supply Water Works, Inc.*, 2011 WL 6655356, at*4 (Iowa Ct. App. Dec. 21, 2011); *Yoos v. Better Life Technology, LLC,* No. 1:09–CV–0660 (LEK/DRH), 2012 WL 177867, at* 4 (N.D.N.Y. Jan. 23, 2012).  But a nonmovant may not rest upon mere denials or allegations; he must instead designate the specific facts that create a triable question of fact.  *Crossley*, 355 F.3d at 1113.  Therefore, in this case, to avoid summary judgment, Plaintiff must present evidence creating a genuine dispute with respect to the latency of any defect in loading. *See Vargo-Schaper*, 619 F.3d at 848.

In analyzing whether a defect is latent, courts have considered the amount of experience possessed by the driver and whether the shipper provided any assurances to the driver regarding the safety of the load.  *Vargo-Schaper,* 619 F.3d at 849; *see also Franklin Stainless Corp.,* 748 F.2d at 870 (noting the significance of the trucker's lack of knowledge about the defect in loading and reasonable reliance on assurances of safety); *White v. Dietrich Metal Framing*, No. 1:06-CV-554, 2007 WL 7049797, at *7 (E.D. Tex. July 5,

12

2007) (stating that "the latent or patent nature of such defect may depend in some measure upon the experience of the observer") (internal quotation marks and citation omitted).

Here, both of these factors militate in favor of summary judgment. Although Plaintiff had not previously hauled plastic pallets for J.B. Hunt, it is undisputed that at the time in question he was an experienced truck driver who previously had hauled and secured wooden pallets, a similar cargo. Plaintiff admitted that when he hauled wooden pallets he had been responsible for securing the load, that he received no special instructions regarding the plastic pallets at issue here, and that it was apparent to him that the plastic pallets were not secured with load locks or straps. In addition, the record is devoid of evidence that Plaintiff received any assurances from Defendants regarding the safety of the load before he left Moberly. These undisputed facts support a determination that any defect in the loading of the plastic pallets was obvious, not latent.

In contravention of these facts, Plaintiff offers his own self-serving, conclusory statements that IFCO, the loader, was solely responsible for the safety of the load; that because the pallets he saw through the rear door were shrink-wrapped, he did not have to secure them; and that when hauling for shippers like Wal-Mart he was not expected to secure the load. Doc. No. 55-1, at 73:9-22; 93:5-95:9. Apart from his own conclusory statements, Plaintiff offers no evidence in support of these assertions, and Plaintiff's statements are insufficient to create a triable issue of fact, as no reasonable jury could find that the absence of securing devices was anything other than open and obvious to Plaintiff. *Vargo-Schaper,* 619 F.3d at 849.

Plaintiff's assertions regarding the sealing of the load do not alter this conclusion.

Viewing the evidence in the light most favorable to Plaintiff, the Court assumes that the load was sealed when Plaintiff first picked up the trailer and re-sealed before he left the Moberly facility. Nevertheless, it is undisputed that Plaintiff had an opportunity to inspect the load and did inspect the load before he left Wal-Mart's facility and that the absence of securing devices was apparent to him when he did so. There is no indication in the record that during the time the load was unsealed Plaintiff attempted to secure the load in any manner. Nor is there any evidence that any of Defendants' employees told Plaintiff that he could not adjust or secure the load either at that time or during the trip to Bolingbrook. Therefore, no reasonable jury could find that the sealing of the load in any way relieved Plaintiff of his duty to cure open or obvious defects in the loading of the trailer. *See Vargo-Schaper*, 619 F.3d at 848.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED**. (Doc. No. 55.)

A separate judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of February, 2013.

14